Morning, Your Honor. My name is William Claiborne. I'm here on behalf of appellants plaintiffs below. I would like to reserve three minutes for rebuttal. Okay, please watch the clock. Beg your pardon? Please watch the clock. Yes, Your Honor. My clients were law-abiding members of the people who were engaging in the constitutionally exercising the discretion afforded them under a state regulatory scheme to implement an unconstitutional policy of imposing a total ban on the carriage of handguns in public for the purpose of self-defense by, once again, exercising the discretion afforded them by a permissive state regulatory scheme to impose a total ban on the issuance of CCWs. Can you tie the injury in this case to the county where this is a state law? I beg your pardon? How can you tie the injury that you have asserted for your clients to the county, the defendant in this case, as opposed to the state because this is a state law? Well, there are the defendants are the City of Los Angeles and the state statute was permissive in several respects. The state regulatory scheme had two parts. It had an enforcement arm and it had a licensing provision. And recently in some dissents filed from a denial of cert in Wilson v. Hawaii, Justice Gorsuch pointed out that in this type of situation, the enforcement provisions and the licensing provisions fit together like a hand in a glove. The licensing provision was set up by the state. However, the state did not issue any licenses. The state left that up to each police board or police chief or sheriff. As a matter of fact, the complaint points out that Ventura County, the sheriff, interpreted the licensing provision to allow for the issuance of licenses. And the court can take judicial notice that at the time of the incidents in this case, there were about 20 jurisdictions which had interpreted the good cause provision of the statute to allow for issuance of licenses for the purpose, merely the standard of using the handgun in public for self-defense. So the state did not tell the board and the city and the police department and the chief not to issue licenses. That was purely discretionary within the board and the chief. You here, if I believe, argues that L.A. City had effectively a no issue regime. What's the evidence for that? Well, some of the things that I pointed out in this complaint were the city had passed an ordinance saying that the board and actually the board, the authority to issue licenses resided in the board. That delegation was made to the board. The city had issued an ordinance saying that licenses could be issued only if the board okayed them. And the standard was it was a privilege, not a right. So that's one point. That's it about paragraph 109. I'm not exactly sure. The city had adopted an ordinance which characterized the issuance of licenses as a privilege which resided in the board to say yea or nay. Another example is the state statutory scheme allows for carriage of a handgun without a license if a person is in immediate danger. The city more or less overrode that by passing an ordinance which said that nobody can fire a gun in the city without a CCW. So the city has overridden a more expansive provision in the state statute. The other major point is the state doesn't issue licenses. The state granted that authority to police boards, police chiefs, and sheriffs. And in this case, the board and the city acting through its city council and the chief had this no issue policy. That's a fundamental violation of a Second Amendment right which actually predates adoption of the Second Amendment. The right to carry a handgun in public for self-defense is a right which predates adoption of the Second Amendment. Can I jump in here for a second? You're relying on the futility doctrine to say that they wouldn't have ever gotten a license even if they had tried to. Does that work where I'm not aware that the record establishes that the plaintiffs knew about LA's requirements and that was the reason that they didn't try to get a permit. So I'm just wondering for the futility doctrine to work, do the plaintiffs have to know that it was futile or not? For the futility doctrine, yes. However, and there are other futility doctrines. Let me stop you for one second. If the answer is yes, is there information in the record to say that your plaintiffs, these plaintiffs knew about LA's licensing requirement? Yes, Your Honor. Because there are other cases in the Ninth Circuit which say, and I cited them in my brief, would say if it's obvious from the face of the licensing provisions that a person would not comply, then the person has no obligation to submit the license. That's the futility doctrine. Here, based on the Chief's proclamations, it's obvious he's never going to issue licenses. Okay, but you're relying on constructive knowledge. There's nothing in the record to show actual knowledge. I actually am not merely relying on the futility doctrine. I'm relying on Sheldon's worth. But with respect to the futility doctrine, I plead in the complaint several times that there was no way plaintiffs would ever get a license from the Chief. And I talk about how the Chief set them up in a catch-22. And so I think that establishes the knowledge that everybody knew, all the players knew beyond constructive knowledge. One of your plaintiffs is from Tennessee. So how is that person going to know about this? Because my understanding is that person was just visiting Los Angeles. Because he intended to live in Los Angeles. And everybody knows it's impossible to get a license in the city of Los Angeles, for example. Well, I still think you've got to be relying on constructive knowledge there, right? I mean, I come to Los Angeles fairly frequently for this job. I have no idea what the rules are for carrying a concealed handgun. Well, what I would say to that is I'm not sure. But I think it differs depending on whether someone is a member of the people that carries a gun. We're at the motion-to-dismiss stage. So you're saying the complaint itself alleges sufficient to show that it was futile to attempt to get a permit. Is that what you're saying? Yes, I am, Your Honor. I'm also saying I had two theories on this. One was the futility doctrine. The other doctrine is the Supreme Court has said as far back as Shuttlesworth that if you have a regulatory scheme and the licensing provision is on its face unconstitutional for one reason or another, the people do not have to comply with the regulatory scheme. This Ninth Circuit has said this in a couple of cases without inquiring into whether the plaintiffs knew, had actual knowledge of the licensing provision. One of those cases is gross. In that case, a doctor went to a park and protested the arrival of some military ships and naval ships carrying nuclear weapons. He did that without getting a license to protest in the park. He was arrested and he was able to sue the municipality because the licensing provision was unconstitutional. There was no inquiry into whether the doctor had actual knowledge of the defects and the licensing provision. Another case is outdoor desert signs. What happened there was an outdoor advertising company built some signs without getting a license and then was the subject of an enforcement action. They then brought a lawsuit in the district court and the Ninth Circuit held that they suffered standing injury, that there was an Article III case in controversy because the... We're really not talking about standing here in the Article III sense. Your clients have alleged injuries. I think we're here talking, trying to figure out to what extent administrative exhaustion is required, and we're at the stage of a motion to dismiss, so I don't want to pretend we've got evidence to look at, but your complaint actually doesn't allege that the city had a no-issue policy. It was a good-cause policy. Your complaint quotes the standard for good cause, which I acknowledge seems restrictive, but how do we know that your clients wouldn't have qualified for good cause if there's never been an application to inquire? Two reasons, Your Honor. Only that's the defendant's argument, that plaintiffs are challenging the good-clause provision of the statute. There are allegations in the complaint in which we make very clear that we are challenging the city defendant's gun control policy in toto. That's the phrase we use, in toto, and we say they took the discretion afforded them under the statute and they just virtually never, ever issued. Only that's not what your complaint actually says. Your complaint says that permits will be issued to people who've satisfied good cause in the eyes of the issuing authority, and so the question becomes, can we take as a given your clients wouldn't have satisfied that? If you're referring, Judge Clipton, to the allegations that perhaps the standard would have allowed issuance of a license to judges and prosecutors, even in Heller, where the court struck down a total ban, the court noted that some people under the total ban qualified. And all I'm asking is, how do we know that your clients didn't qualify? They're seeking damages. They're seeking monetary damages on the premise they wouldn't have qualified, but they didn't ask. We allege, A, that the city defendants adopted a total ban on the issuance of... No, that's not what you allege, because your complaint includes this good cause exception. And my question is, how can we take as a given that your client wouldn't have qualified for an issuance of a permit under the policy being implemented by whoever it was making the decisions? I'm not going to back off my position, but taking your argument there, the complaint reproduces the language that the chief put on the chief's website, and the chief defined the chief's definition of good cause. Every licensing-issuing entity was entitled to come up with their own definition of good cause, and the chief's definition of good cause was basically the definition that was struck down in Bruin. And can you point to the language in the complaint to which you're referring? Yes, Your Honor. Well, I don't have that in my binder. However, the complaint is ER 31, and it is approximately, I would say there's a section heading which says we are challenging the entire gun control regime, and then in the alternative what we say is if the chief did not exercise the chief's discretion to introduce this across-the-board gun control regime, the chief and the city defendants develop their own. So we have in the alternative there, but we reproduce roundabout 105 to 109. Okay, I do see at paragraph 94, the city of Los Angeles adopted an OTCW policy to impose a total ban on carriage of handguns outside the home for self-defense. So are you relying on that? Right. This is at paragraph 94. 107 has the definition of good. Right. As case, it's good cause, I guess. So that is a definition which requires a showing of a special need to carry a handgun, and that is what the Supreme Court struck down in Bruin. That statute requires. Yeah, but this isn't the Bruin case. This isn't a challenge. It's an effort by your clients to obtain monetary damages. And so I think the question is a valid one. How can we be sure? And again, this is the stage of a motion to dismiss. But if your client's never applied, do we take as a given? Couldn't have been issued? Well, I think so because the focus in the case should be on what the city defendants did and did not do. They're the wrongdoers. But this is a monetary damages case. It's not an attack on the ordinance or the policy as such. You're seeking monetary damages. And if it's not clear that your clients actually would have been denied the permit, I'm not sure why the administrative exhaustion requirement isn't applicable. Well, we cited a case in our briefs. It is an immigration case. And the claimant, plaintiff, whatever, in that case. I'm not sure the case law from this court on immigration is going to be directly applicable to 1983 action here. Well, 1983 has no exhaustion of remedies requirement. No, but to get the damages, if in fact it were the case that your client would have gotten the permit, if they'd filled out the form, it's hard to see why they should be entitled to damages because they were not energetic enough to fill out the form. Well, if I may, our complaint alleges that it's obvious nobody ever would have got a license. Our complaint also alleges that the city council passed an ordinance saying that the board can issue licenses and it's a privilege. It's not a right. And also the chief on the website published the chief's interpretation of the good cause provision. And it's obvious from a review of the chief's own good cause provision that the issuance of licenses is going to be based on a showing of a special need. And that is what the Bruin court struck down. Do you want to take some time for rebuttal? I beg your pardon. Yes, you want to save time for rebuttal. You're down to 54 seconds. Thank you. Good morning, Your Honors. And may it please the court, Assistant City Attorney Sean Dabby Jacobs for the city of Los Angeles. California law, which plaintiffs do not challenge in this case, does not allow for the open carry of firearms. And it only allows someone to have firearms in public if they have a CCW, which was issued by the local public entity where they live. Which it's undisputed in this case, as Your Honors recognize, that they never applied. They never got one. And if they had applied, what was going to happen? We don't know. It's alleged in the complaint that they wouldn't have gotten it because they don't meet the standard of good cause as set out by the, I guess it's the police chief or the department. Right. So that good cause, in light of Bruin, is now invalidated. We recognize that. We're not here to say it is still constitutional. But what the answer is, though, is that we don't know. We still don't know whether they would have gotten a license even without that. So does that become an evidence issue? I mean, do they have to prove somehow that they wouldn't have gotten it? They do allege that they don't think they would have gotten it. Well, they don't allege that they would have met any of the other licensing requirements. I mean, the state scheme, which they do not challenge, also says you can have a license that you have firearms training, you're a good moral character, you don't have mental health issues. But that's not what the dismissal by the district court was based on, was it? I mean, you haven't given us evidence or anything we can consider at this stage that they wouldn't have satisfied the good moral character or wouldn't have satisfied the firearm training. This is a stage of a motion to dismiss. So why is that something we're supposed to base a decision on here? Well, because they don't allege in their complaint that they would have satisfied any of the other requirements. And on a 12B6 motion, the court can just look at the pleadings, and it can affirm on any theory that's correct, even if the district court judge didn't reach that particular issue. Well, they do allege that LA's policy was actually to not issue any permits except for certain officials. So what do we do with that allegation? Well, they base that on the whole good cause issue, because as your honors talked about in paragraph 107, the definition of good cause is for that special self-defense need. Right. Right. But they don't challenge it. And they didn't challenge it. So they were arrested under a state law, which they do not challenge. They don't argue that there was not probable cause for their arrest. So there's no Fourth Amendment violation. So if there's probable cause for the arrest, and it's based on a lawful statute, a lawful arrest, now you cannot turn that into a Second Amendment violation. Why not? Yeah, I'm not tracking that. I mean, 1983 is all about violation of constitutional rights, and you've got a constitutional right to bear arms outside the home for self-defense. And these individuals were arrested for bearing arms outside the home, and they say it was for self-defense. Why isn't that a potential 1983 violation? It's not proven up yet, but this is a stage of a motion to dismiss. Because as your honors recognize, they never challenged it. The way that they're challenging it, they can't wait until they get arrested and say, oh, no, now I don't have a license. It would be like if you're driving without a license. Well, we do allow pre-enforcement challenges. The Supreme Court has allowed pre-enforcement challenges. Right. So there's no reason why they – I don't see why they can't challenge the unconstitutional licensing regime, even if it hasn't been applied to them. But here it was applied to them, actually, so it's not even a pre-enforcement challenge. I guess I'm not following you either. Because they – here, they were – I think your argument might make sense if this whole scheme didn't give the city the ability to define good cause and to sort of set the parameters for at least some of the conditions to be able to get a permit. But where the city does have that definitional authority, why – like, I come back to – I don't understand the argument about why they couldn't make a Second Amendment challenge without bringing a larger challenge to the whole statutory scheme. Because they weren't arrested for violating a city policy or violating a municipal ordinance. They were, though, right? Because the state law says you can't have a weapon unless you have a license that's issued by the local government. And then the local government, they allege, will not issue a license. So we have to read all three of those laws together. Well, but they could have brought a pre-enforcement challenge. They could have, even if they had never applied for a license. But here, there was enforcement, so they're not in a pre-enforcement situation. They got arrested. That's what triggered it. This isn't the NRA bringing a suit. I suspect there may be support elsewhere, but they got arrested. They've suffered an injury. They allege they suffered this injury because their constitutional rights were violated. Why can't they bring that cause of action? Because they're not challenging the state statute. Why do they have to challenge the state statute? It was a statute that turned authority over to make the decision to the local police chief. Maybe in this case, it was the Board of Police Commissioners. I don't know. I mean, LA has structured it in a certain way, and that's fine. LA has the authority to do that. But if it was LA that decided to have a policy, we're not going to issue them unless we think they're really necessary. That is, the judges, law enforcement people under threat, and so forth. Then these people contend at the stage of a motion dismiss, they wouldn't have qualified. Why does that justify dismissal at this stage? Because they were arrested under state law, not court. The charge wasn't violating an LAMC code or violating the CCW policy. They were arrested under— Who were they arrested by? Well, LAPD. That's the reason that LAPD is the defendant. Now, let's take an easy one. I'm going to leave aside the limitations issue for a moment. Mr. Matthews is from Tennessee, so if I understand it, he couldn't have been issued a permit because the permits were limited to residents. Is that correct? Right. How can the state or the city or the arresting officer decide to limit constitutional rights to people who live there? I mean, Judge Forrest and I travel here. Does that mean we don't have any constitutional rights because we don't actually live here, so we can't speak out? We can't exercise religious rights here because we don't live here? No state, no municipality can condition constitutional rights on being a resident of that municipality. Well, the state— Oh, I'm sorry. So I'm having trouble understanding. It's like people are pointing fingers. Sue the state, sue the city, and so forth. If you put all the pieces together, these people got arrested by officers of the city of Los Angeles. So you can argue, but I don't understand how that's a basis to dismiss the case at this stage. Well, I think for Mr. Matthews, it's actually relatively easy. He was a resident of Tennessee. So under state law, it says the locality, you can only get a CCW from that locality where you live. So regardless of the good cause requirement, Mr. Matthews was never going to be able to get a CCW from Los Angeles or any other locality in California. And that might be the basis for saying the claim by Mr. Matthews, if it proceeds, should be against the state. But that's not what we're dealing with here. What we're dealing with here is a dismissal based on the failure disadministrative exhaustion theory. And I'm not sure how that connects at the stage of a motion to dismiss when the arrest was done by Los Angeles officers. Well, because he was never going to be able to get a license under any – the state statutes wouldn't have allowed Mr. Matthews to get a license from Los Angeles, even if there was no good cause requirement, right? Okay, suppose – So any out-of-state resident wouldn't be able to. He wasn't a resident of the state. So under the state law, he would not have been able to obtain the CCW. And he admits that he wouldn't have been able to get a CCW permit even if the good cause requirement didn't exist, but says, oh, well, you should disregard it because it didn't – that good cause requirement existed for everybody, so I want to be treated like residents of Los Angeles. So I thought your argument was that his claims are time-barred. It's both. They are time-barred, too. Because, you know, as Judge Clifton was pointing out, he could come to California and he would still have his First Amendment rights. He couldn't say you can't protect your First Amendment rights because you're a citizen of Tennessee. So it's not obvious to me that someone who comes here from Tennessee is rightfully deprived of their Second Amendment rights. But I didn't think that was before us because your argument was that his claims are time-barred. I think it was both. I think we talked about both in our papers. But it was time-barred. So it's a little bit odd to say your Second Amendment rights can be eliminated if you come from a different state. I'm not sure where that comes from. Because the state law says that the state law, which they do not challenge, says you can only bring, you can only get a CCW from the locality where you live. Okay, well, we don't know whether that's constitutional or not. It's not really before us. But they're not, because the state, they're not challenging the state law. We're not talking about Mr. Matthews. I mean, we're talking about Mr. Hearn. I led you down that road because I deliberately set aside the limitations. I apologize for that. But I think you're still focused on the question of whether the city of Los Angeles can defeat his claim at the stage of a motion to dismiss on the basis offered by the district court, at least, that he'd never made an application. And you are correct in noting that the police chief under the statute couldn't have issued the permit. That may explain why, in the end, the claim against the city on behalf of Mr. Matthews seems to be on shaky footing. But is it subject to dismissal at this point? Maybe I'll get off of Matthews because there are other arguments regarding Matthews. But as to the other defendants, we seem to be going around and around. Is there anything more you want to add on the subject of why that's not something that plaintiffs can prove at trial? Yeah, I think there is, Your Honors. I think that for the residents of Los Angeles, I mean, I don't know if I answered the questions adequately about Matthews. I think he is barred by the statute of limitations. I don't think the continuing violation applies. He was arrested today. Not today, but you understand what I'm saying. He was arrested on day one, whatever that day was. I don't have the date in front of me. He doesn't bring his lawsuit until more than two years later. It's controlled by the state statute. 1983 cases are controlled by the state statute. So it's not a continuing violation because it wasn't. The only times you have continuing violations are in conspiracy-type cases or there was one about receiving and keeping stolen property. So the criminal defendant had that stolen property for the entire time until the day he was arrested. So it didn't matter that he got the stolen property way back here. He still had it way over here when he was arrested. So I think that's a different kind of case. So I don't think the continuing violation applies. So I think it's both for Matthews. It's the statute and the fact that under the state licensing scheme, he wouldn't have been able to get a license. But going back to the city residents, I think the New York courts holding that we talk about in our papers in People v. Rodriguez, I realize it's a New York state court case, so it's not binding authority on this court, but that's at 171 New York, NYS, 3rd, 802, and 805. I think that's similar because that case talked about after New York invalidated their law after Bruin, the plaintiff challenged his firearms conviction as being unconstitutional, and the New York court rejected the challenge because the states are still allowed to have the licensing requirements as long as a good cause self-defense isn't one of them. And because he never applied for a license, he lacked standing to bring a Second Amendment challenge to the licensing requirement, and the New York court found that, quote, but with the statute criminalizing unlicensed possessions. In other words, he does not seek to demonstrate either that the licensing law was unconstitutional, we already know it was, or that it was unfairly applied to him. It wasn't applied to him at all, but that the Second Amendment itself, the right to bear arms, confers an absolute entitlement to possess concealed firearms in public, license be damned. And that's at page 805 of that decision. I mean, I think that reasoning holds true here. I think the cases that Mr. Claiborne cites, the Desert Grossman v. City of Portland and the Desert Outdoor Advertising cases are different because in Grossman, the plaintiff who was trying to protest in the park, he was arrested for violating that specific ordinance. And that specific ordinance was unconstitutional, as the court found. So I think it's in a different position than we have here, where they were arrested under a constitutional state law. I don't understand why you say arrested under a constitutional state law. You're right that they're not challenging at the state level, but the state itself has changed its law, as you mentioned before, in recognition that it doesn't stand under Bruin. So that's not actually true, that they were arrested under a constitutional statute. And so we have case law that says that when you have an unconstitutional policy or law and you're challenging the application of that, that the causation analysis is quite straightforward in terms of being able to tie the alleged injury to the official action of enforcing this unconstitutional law. So I don't understand the argument that you're making that ignores the fact that even California now recognizes that what was going on before did not stand. Right, but it didn't know it at the time. I mean, all of this happened pre-Bruin. That might work for a qualified immunity defense, but that defense is only available to individuals. Not suing the arresting officer, they're suing municipality. And you can argue, if we haven't resolved the Matthews claim on another ground, that the state tied the city's hands there. But as to the L.A. residents, the state law appeared to leave it to the city to decide how to apply this good cause requirement. And the thrust of the complaint, as I understand it, is that the city's decision that good cause meant you've got to come up with a really good reason, and it was limited to judges and law enforcement and so forth, that's the thrust of the case for the two Los Angeles residents. And that was something that was the city policy that's now the subject of the attack. So why should that claim be dismissed? Because at the time that they were arrested, the state law had the good cause requirement in there, too. So which allowed all the states to have these good cause requirements, I mean the localities, I'm sorry, to have the good cause requirements. To say the state was at least in part to blame, I'm not sure how that's a defense to the city's decision that good cause should be narrowly interpreted to those who are law enforcement officers, for example. That's the city's policy, and that's the subject of the current attack. But they still would have to, they would still have to somehow, they could have challenged the law when they were being criminally prosecuted or when they were arrested. To do something doesn't mean you can't do something else. Sure, they could have challenged the law, but they were arrested, and that's what they contend injured them, and they're saying it's the city's fault. And what you're saying isn't that, well, the city had nothing to do with it. You're saying the city was drawing upon the state, but I'm not sure that's the basis. I guess we're both repeating ourselves, so. You're over time. Please wrap it up. I mean, I think I've made most of my arguments. I mean, the only other thing I'll say, desert outdoor advertising is also distinguishable because they were, the city, Moreno Valley was, they were enforcing the actual licensing permitting scheme against them, whereas here, once, you know, they're not alleging a Fourth Amendment violation. It was a, you know, they had probable cause to arrest. It's sort of similar to the First Amendment cases where if there's probable cause to arrest, you normally can't say there's a First Amendment violation if there's probable cause for the underlying arrest. This should be no different. Okay, I think we've heard your argument. Thank you. Thank you, Your Honors. To return for a moment to the actual knowledge issue, plaintiff's theory is the city defendants enacted an unconstitutional policy which they applied to the plaintiffs, and everybody liked them. Can I jump in on this last point that we were exploring with your friend across the aisle? It seems you're not challenging the state law in this case, but if we were to look at, I mean, I think if we look at Bruin and we conclude that there were flaws in the state law, and there were also flaws in the city policy for what good cause means, if the good cause requirement at all was problematic, then the argument is, how can the city be liable because it all traces back to the state? Footnote 9 of Bruin says if a jurisdiction has an unconstitutional, may-issue regime based on the statutes, but they're enforcing it as a shall-issue regime, then it passes constitutional muster. Every licensing entity in this state had the option of treating the good cause provision as being satisfied by showing the standard Second Amendment right to carry a handgun in public for self-defense. So I want to restate your argument to make sure I understand it.  I want to restate what you just said to make sure I understand it. Your argument is even if the state had an impermissible may-issue scheme, if the local governments were employing it as a shall-issue, so long as the requirements were met, and they were not defining good cause to be unnecessarily restrictive, then that would be constitutionally permissible, and you can compare that to what Los Angeles was doing, which was constitutionally impermissible because of the way it was defining good cause. Is that your argument? Yes, that's what the Supreme Court says in footnote 9 of Bruin. And if I may, paragraph 94 of our complaint, the allegation is the city had a no-issue policy. I don't have an actual paragraph, but it's in the neighborhood of that one, and it says plaintiffs challenged the defendant's gun control policy in toto. We are not focusing on the good cause provision. I think 25 jurisdictions in this state allowed the licensing entity to issue licenses based on the standard Second Amendment right to carry a gun and self-defense, which has existed since before the founding. And so nobody is challenging the constitutionality of those jurisdictions because those jurisdictions exercised the discretion under the permissive licensing provision to issue licenses in a way that was constitutional. Okay, you're well over time now, so please go on.  Thank you. Okay, the case of Matthews v. City of Los Angeles is submitted.
judges: CLIFTON, IKUTA, FORREST